# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

PHYLLIS REECE, on behalf of JOE )
REECE, )
                                           )
                Plaintiff, )
                                           )
vs. )    Case No. CIV-14-734-M
                                           )
UNITED STATES OF AMERICA, )
                                           )
                Defendant. )

## ORDER

This case is scheduled for trial on the Court's September 2015 trial docket.

Before the Court is defendant's Motion for Summary Judgment, filed July 8, 2015. On July 29, 2015, plaintiff filed her response, and on August 5, 2015, defendant filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.    Introduction[1]

On October 4, 2012, Joe Reece ("Mr. Reece") was at the Veterans Affairs Medical Center of Oklahoma City ("VAMC") for a doctor's appointment with Dr. Sopukro Tienabeso. Mr. Reece was dissatisfied with his medical treatment at the VAMC and became upset during his doctor's appointment when he was expressing his dissatisfaction. Plaintiff Phyllis Reece ("Mrs. Reece"), Joe Reece's spouse, remained in Dr. Tienabeso's office while Mr. Reece exited the office and walked into the main area of C-Module, where Mr. Reece encountered a VAMC staff member, Bennett Warman, LPN. Nurse Warman stepped toward Mr. Reece, attempting to calm him. Mr. Reece yelled at Nurse Warman: "Don't you touch me. I'll break your arm off." Declaration of Bennett

---

[1]In her response, plaintiff does not specifically dispute any of the facts set forth in this introduction.

Warman of the Veteran Affairs Medical Center of Oklahoma City at ¶ 4, attached as Exhibit 5 to defendant's Motion for Summary Judgment. VAMC staff member, Darlene Ross, observed and heard Mr. Reece's response to Nurse Warman, felt that it was threatening and hostile, and activated the VAMC panic alarm. Ms. Ross explained the incident to the VAMC police dispatch and provided a physical description of Mr. Reece.

VAMC police officers Sergeant Robert Armstrong and Corporal Camron Hanks received calls from the VAMC police dispatch center to respond to an individual being assaultive toward staff in C-Module. Both officers have testified that at that time they believed that a possible violation of state or federal law had occurred. Officers Hanks and Armstrong, dressed in their law enforcement uniforms, proceeded to investigate and identified Mr. Reece as he approached the south information desk on the first floor of the VAMC. Mr. Reece was using a walker. The officers identified themselves as law enforcement, and Corporal Hanks asked Mr. Reece to return to C-Module to discuss the incident and resolve it. Mr. Reece would not return to C-Module and became increasingly agitated during his interaction with Corporal Hanks, pushing towards Corporal Hanks and pointing his fingers at Corporal Hanks and at the floor.

Corporal Hanks touched Mr. Reece's arm and explained that he would not permit Mr. Reece to leave the premises until the incident in C-Module had been discussed. Mr. Reece began gesturing emphatically and yelling when speaking to Corporal Hanks. Mr. Reece again informed Corporal Hanks that he was leaving the premises and began to walk away from Corporal Hanks. Corporal Hanks again informed Mr. Reece that he could not leave the premises, placing his hand on Mr. Reece's arm. Mr. Reece resisted Corporal Hanks' verbal commands and requests and continued walking toward the exit. Corporal Hanks attempted to stop Mr. Reece from leaving the VAMC by

2

placing both hands on Mr. Reece's left arm. Mr. Reece raised his right fist as if to punch Corporal Hanks, causing Corporal Hanks to release Mr. Reece's arm. Mr. Reece lunged toward Sergeant Armstrong, attempting to push him, and then walked toward Corporal Hanks, attempting to hit Corporal Hanks with his hands.

Mr. Reece leaned on a wall and continued pointing and yelling at Sergeant Armstrong while Corporal Hanks attempted to subdue Mr. Reece, pinning his arms so he could not hit the officers. Mr. Reece physically resisted. Mr. Reece was informed that he was under arrest, and Mr. Reece again raised his fists. Lieutenant Kelly Bales then arrived at the scene to provide assistance, and Mr. Reece began talking to him. Lieutenant Bales told Mr. Reece to comply with the officer's commands. While Mr. Reece interacted with Lieutenant Bales, Corporal Hanks and Sergeant Armstrong switched places with Corporal Hanks stepping closer to Mr. Reece. Corporal Hanks touched Mr. Reece's left arm attempting again to arrest Mr. Reece by placing his hands behind his back, and Mr. Reece again resisted arrest refusing to allow Corporal Hanks to place his hands behind his back. Mr. Reece then stumbled towards Lieutenant Bales.

As Mr. Reece continued to resist the officers and disregard verbal commands, Sergeant Armstrong delivered approximately a one second burst of pepper spray. Mr. Reece continued walking forward and moving despite Lieutenant Bales and Corporal Hanks' attempts to secure his arms and complete the arrest. Mr. Reece was taken to the floor and finally subdued. Lieutenant Bales and Corporal Hanks each secured Mr. Reece's arms; Officer Steiner secured his feet, and Officer Zumwalt secured his torso in order to prevent Mr. Reece's additional resistance. Mr. Reece finally stopped resisting the police officers and allowed them to place him under arrest.

Mr. Reece was then lifted from the ground, placed in a wheelchair, and transported to the VA Emergency Room. Mr. Reece was later transported to Oklahoma County Jail and was charged with resisting an executive officer, obstruction of a public officer in the discharge of duties, and assault upon a police officer. Mr. Reece pled nolo contendere to obstructing an officer in the performance of his official duties.

Plaintiff has brought the instant action under the Federal Tort Claims Act ("FTCA"), alleging a cause of action for assault and battery and a cause of action for negligent use of excessive force. Defendant now moves for summary judgment as to both causes of action.

## II. Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

4

*Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.  Discussion

    A.  Negligent use of excessive force

Defendant asserts that this Court lacks subject matter jurisdiction over plaintiff's negligent use of excessive force cause of action. Specifically, defendant asserts that this Court lacks jurisdiction because plaintiff fails to state a claim which is cognizable under the FTCA. Defendant contends that while the FTCA provides a remedy for common law torts committed by federal employees acting within the scope of employment under 28 U.S.C. § 2679(b)(1), there has been no waiver of the United States' sovereign immunity for claims in violation of federal constitutional laws and no cause of action has been created against the United States for negligent use of excessive force. In her response, plaintiff does not address whether this Court has subject matter jurisdiction over her negligent use of excessive force cause of action. Accordingly, the Court finds that plaintiff has confessed this issue and that her negligent use of excessive force cause of action should be dismissed for lack of subject matter jurisdiction.

    B.  Assault and battery

Defendant asserts that it is entitled to summary judgment because the police officers' actions are protected by the law enforcement privilege.[2] Oklahoma law clearly recognizes a law

---

[2]While the Tenth Circuit has not addressed the law enforcement privilege in the FTCA context, the Fifth Circuit has held that federal law enforcement officers could assert a state law enforcement privilege under the FTCA. *See Villafranca v. United States*, 587 F.3d 257 (5th Cir. 2009). In her response, plaintiff appears to concede that the federal officers can assert the Oklahoma law enforcement privilege; plaintiff just disputes that the officers' actions are protected by the law enforcement privilege.

enforcement privilege. *See Morales v. City of Okla. City*, 230 P.3d 869 (Okla. 2010).

> [A] police officer has a special dispensation from the duty of ordinary care not to endanger others. A police officer's duty is very specific: it is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest. In applying this standard, an officer's subjective mistake of fact or law is irrelevant, including whether he (she) is acting in good faith or bad. The question is whether the objective facts support the degree of force employed.
>
> Among the factors that may be considered in evaluating the objective reasonableness of an officer's use of force in making an arrest are: (1) the severity of the crime of which the arrestee is suspected; (2) whether the suspect poses an immediate threat to the safety of the officers or others, (3) whether the suspect is actively resisting arrest or attempting to evade arrest; (4) the known character of the arrestee; (5) the existence of alternative methods of accomplishing the arrest; (6) the physical size, strength and weaponry of the officers compared to those of the suspect; and (7) the exigency of the moment.

*Id.* at 880.

In determining whether defendant is entitled to summary judgment as to plaintiff's assault and battery cause of action, the Court must first determine whether the officers' initial detention of Mr. Reece was legally permissible. The Supreme Court recognizes "three categories of police-citizen encounters: consensual encounters, investigative stops, and arrests." *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) (internal citation omitted). "An investigative detention, also called a *Terry* stop, is an encounter in which police may stop and briefly detain a person for investigative purposes." *Id.* (internal quotations and citation omitted). An investigative detention "is justified if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Id.* at 1191-92 (internal quotations and citation omitted).

Having carefully reviewed the parties' briefs and evidentiary submissions, and viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds that the police officers had grounds to conduct an investigative stop and detain Mr. Reece to determine whether a crime had been committed and, thus, the officers' initial detention of Mr. Reece was legally permissible. It is undisputed that Nurse Darlene Ross activated the panic alarm and provided an explanation of what had occurred, along with a physical description of Mr. Reece to dispatch.[3] It is also undisputed that Corporal Hanks and Sergeant Armstrong were notified by the VAMC dispatch that an individual in C-Module was being assaultive toward staff. Based upon the above information, the Court finds that the officers reasonably believed a crime had occurred in C-Module and lawfully detained Mr. Reece to investigate.

Having determined that the officers' initial detention of Mr. Reece was legally permissible, the Court must now determine whether the police officers' use of force was objectively reasonable. Because the basic facts surrounding the use of force themselves are not disputed, and because the video clearly depicts, and reasonable minds cannot differ as to, what occurred, the Court finds that whether the police officers' use of force was objectively reasonable may be determined as a matter of law. Having carefully reviewed the video, the Court finds that the officers' use of force was clearly objectively reasonable and, thus, the officers' actions are protected by Oklahoma's law enforcement privilege. Specifically, the Court finds that the factors set forth in *Morales* weigh in

---

[3] Plaintiff asserts there was no basis for the panic alarm to have been activated. However, whether the panic alarm should have been activated is irrelevant to the Court's analysis of whether the officers' use of force was objectively reasonable. In making the objectively reasonable force determination, the Court must look at what the police officers knew at the time. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

favor of the police officers. First, the police officers received a notification from dispatch that Mr. Reece was being assaultive toward staff in C-Module; thus, at that point, the officers believed a possible felony offense had occurred. Second, when Mr. Reece was detained and told he could not leave, Mr. Reece became hostile, pushed the officers, and attempted numerous times to hit the officers. The Court finds Mr. Reece's behavior and actions clearly posed a threat to the safety of the officers and to the public, and this factor weighs heavily in favor of the officers.

Third, once informed that he was under arrest, Mr. Reece actively resisted arrest.[4] Accordingly, the Court finds this factor weighs heavily in favor of the officers. Fourth, the Court finds that at the time of the incident, the police officers had no knowledge of Mr. Reece's mental health issues and plaintiff has submitted no evidence of any factors readily apparent at the time of the incident that would have alerted the officers to such concerns. Fifth, the Court finds that the officers employed many alternative methods to accomplish the detention and arrest of Mr. Reece prior to using the pepper spray and physically taking Mr. Reece down to the ground. The officers verbally informed Mr. Reece multiple times that he could not leave the premises and that he was under arrest and applied only some force by touching Mr. Reece's arm or his hands to effectuate the arrest. Further, the Court finds that the officers' actions complied with the VAMC's use of force policy. Sixth, while Mr. Reece had a walker during most of the incident, a review of the video clearly shows that Mr. Reece often used the walker to forcefully push the officers away. Additionally, Mr. Reece, at a height of 6'2" and weighing at least 210 pounds, was much larger than

---

[4]In her response, plaintiff asserts that Mr. Reece had the right to physically resist an illegal arrest. However, the Court finds that the officers' arrest of Mr. Reece was lawful. The officers clearly had probable cause to arrest Mr. Reece for obstruction of an officer and assault upon a police officer.

the officers. Finally, the Court finds that the incident was rapidly evolving requiring quick decisions from the officers involved.

Finally, the Court finds that under the totality of the circumstances, the officers' use of force was objectively reasonable. The officers initially attempted to talk to Mr. Reece and to get him to accompany them back to C-Module. Mr. Reece, however, became more and more hostile, and ultimately physically resisted, including throwing punches at the officers, any attempt to detain him at the facility. Mr. Reece's conduct left the officers with no other option but to subdue and restrain Mr. Reece in order to effectuate the arrest. The Court finds the force the officers ultimately used was clearly reasonable under these circumstances.

The Court, thus, finds that the officers' actions are protected by Oklahoma's law enforcement privilege and defendant, therefore, is entitled to summary judgment as to plaintiff's assault and battery cause of action.

IV. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS defendant's Motion for Summary Judgment [docket no. 15].

**IT IS SO ORDERED this 19th day of August, 2015.**

*[signature]*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE